Good morning, your honors. May it please the court. Attorney Sassoon Dalbanian appearing on behalf of Petitioner Maria and Petitioner Valencia. Your honors, in this case, the sole issue on appeal is whether there is an affirmative duty on the part of an IJ to advise an alien of the right to apply for asylum. The government cites the Fifth Circuit case Osorio. However, although I will discuss that later, we would argue that Orantes-Hernandez versus Smith, the Ninth Circuit case from 1984, is what applies, well, actually, it was affirmed by this court in 1990, is what applies in this case. In that case, the government argued that asserting the right that all aliens must be given the right to apply for asylum and the judge notifying them is potentially burdensome because it would foster frivolous claims. However, the government does not provide any support for this supposition the court held. Now, also- I'm quite familiar with Orantes-Hernandez. Yes. And in that case, the district judge made meticulous findings of government abuses and violations which required protection of the rights with respect to this particular group. Now, we have nothing like that in this record. That was a case coming up in the district court. So- Your Honor? So how can you say that that case is controlling here? Your Honor, although it may not be directly controlling because that was particularly only with regard to the injunction, I am aware that the I.J. made findings with regard to the abuses in that case. I would say in this case, on the administrative record, page 61- It was the district judge. The district judge, which was affirmed by the Ninth Circuit. On page 61 of the administrative record, the I.J. states- and this is a pro se applicant who does not know how to make a claim for asylum or indicate fear. He answers whatever questions there are. And the I.J. states, I don't see that you are eligible for any relief from removal. On page 69 of the administrative record, after the T.A. says- the trial attorney says, I don't see any relief, Your Honor. There's no relief in this case. The I.J. says, it does not appear to the court and to the government that you are eligible for any relief. So the alien presumably- Well, how why would they say- why would he say that she was eligible for relief? What is there in the record that would indicate that she was? Your Honor, in this case, there's- she was never questioned with regard to this issue. So our point would be that if it's an alien who is pro se, they wait for the I.J. to question them as to whatever the issues are, whether there is a fear. The I.J. didn't even ask, do you have a fear, to be able to advise her of the right to asylum. But the position was that she had to be told that she had a right. Your Honor, actually, our position, let me rephrase, is that at least the I.J. has to ask a pro se applicant whether they have a fear of returning to know whether there is apparent eligibility. Because if they don't ask, do you have a fear of returning to your country, the pro se applicant may be too afraid or not even know to speak up to the question that's not even asked and say, yes, I do have a fear, or to even voice the fear in this case, especially when she's already been told twice that there's no relief available. That's our whole position in this case. Was there anything in the written notice referring to the settlement? There is not. Actually, the NTA, it's interesting because in Orantes, they refer to the document, the I-274. But if you look at the notice to appear, it also says you have the right to appear in court and so forth. And the judge typically advises right to counsel. The notice to appear also says you have the right to apply for voluntary departure in court, but they don't mention anything about the right to asylum. So this person was never put on notice that they have the right to apply for asylum. And I.J. Garza in Osorio, which we would argue that it's not controlling in the Fifth Circuit, actually argued in dissent that without being told to have the right to apply for asylum, it was a violation of due process and meaningless, the right of aliens from other appropriate circumstances. I would like to reserve the remainder of my time for rebuttal, Your Honor. Thank you. Good morning, Your Honors. My name is Michelle Sarko. I'm here representing the Attorney General on this matter. The sole issue before this Court is whether the Board properly concluded that the immigration judge committed no reversible error in finding that the immigration judge had no duty to apply for asylum, withholding protection under the Convention Against Torture, because the circumstances in this case did not reasonably reflect the alien's apparent eligibility as required by the regulations where she designated Mexico to be the country of removal, and she did not express a fear of persecution or torture in Mexico or attempt to articulate a theory that would support her claims. I would first note that the Hernandez case cited by Petitioner at this argument was not cited in their briefs to the Court, and therefore, I did not have a chance to respond to that particular argument. Are you familiar with the case? I have read it sometime in the past. I can't say that I'm totally familiar at this point. But as I recall, I think it related to specific individuals from El Salvador, if I recall correctly, and there were specific findings made by the District Court regarding potential abuses by the government in that circumstance of class of aliens. And I do not recall the Court of Appeals' decisions in that case. That's too bad. At any rate, based on the regulations here at issue, there was no duty for the immigration judge to advise Petitioner of the right to apply for asylum, asylum or protection under CAT. There is no statutory right for blanket notice in the statutes. The Congress did not set forth that requirement. Because this is an alien seeking admission to the United States, they only have the rights set forth by statute. Those are the only procedural rights that they have in seeking admission to the United States. This is a particular alien, and she's an alien. Suppose this were a removal petition, a removal proceeding for all purposes, would your position be different? Well, I don't – I believe it would be the same under the current Ninth Circuit case law. I can't say what the Board would say in that circumstance, because that was not an issue in this case. I can't speak for the Board. But I would think that based on the prior Ninth Circuit case law that's come through, that they would say that there is no obligation. Actually, I shouldn't say that. I only know for the person in this circumstance who's seeking entry who was paroled in. So I do not know a person in a deportation proceeding with an answer would be different. This individual who's seeking admission, again, has no procedural rights other than those set forth in statutory regulation. The statute here does not require it. The regulations here, because the Petitioner designated Mexico as the country that she wanted to go back to if she was ordered to move, don't require the immigration judge to advise her of her right to apply for asylum withholding her cap. It's only if she set forth apparent eligibility based on the information in the record, either her own testimony or documents that she put in, that would reasonably reveal indication that she might have a fear of persecution or torture, that there would be an obligation for the immigration judge to advise her of her right to apply for asylum withholding her cap. And here, she had ample opportunity to set forth any type of claim like that. The immigration judge gave her notice of her opportunity to obtain counsel if she chose to continue to several times, asked her what documents and accepted whatever documents she wanted to put into the record, and also asked her, is there anything else that you wanted to tell the court at the end of the proceedings? And she did not advise the court at all or give any indication that she had a fear of returning to Mexico. And as I said, indeed, asked to be removed to Mexico if she was ordered to be removed. Sotomayor Could she have argued to the BIA, presented anything to the BIA in an appeal that would indicate that she had the right? Kagan She could. She could have made those arguments on appeal, and then, if there was sufficient evidence, asked for the court to remand to the immigration judge for consideration. She did not set forth any claim on appeal as to her eligibility for asylum withholding or cap. Sotomayor And if this is still, since this is on appeal, would she still have, if something new came up, would she still petition to reopen on the basis of a? Kagan If there was a changed country condition, she could. She could. Otherwise, she could ask the other ways to ask DHS to join in a motion to reopen. So in either of those situations. Here is the Fifth Circuit set forth in the case cited in the brief, in our brief. There's a administrative burden that would come into play if a blanket notice were required. And the way the regulations are set up, it's to balance those interests of the government, not to have tons of frivolous asylum claims presented by just giving blanket notice. Rather, it's calculated here that if there's apparent eligibility, that the immigration judge will therefore advise the alien of the right to apply for asylum withholding. And that's a reasonable balancing of the issues and circumstances. And therefore, we would ask the court to affirm the board's decision, finding that the immigration judge did not err in finding, in not advising the petitioner of a right to apply for asylum withholding or cap. In this instance, because the regulations provided no duty for the immigration judge to do so, and she showed no apparent eligibility on this record, that she was eligible for asylum withholding or cap. The court has no evidence. Sotomayor, she was told of her right to a lawyer and given a list, wasn't she? Yes, twice. And there was a four-month interim in between those two. And she was given the notice twice and the list twice. And what happened? And there were several continuances after that. She couldn't find anybody to represent her? Is that what happened? Apparently not. And, you know, I don't know why that might be, but it could be because of her connection. Thank you, Your Honor. Thank you. Your Honor, Justice Del Valle, in reply. With regard to the case that was not raised in the opening brief, I was not the attorney on the case, but I will file a Rule 28J letter as soon as we are complete with the arguments. With regard to apparent eligibility. Well, it's hardly something new. I understand. Apparent. It was 1987. Okay. With regard to the apparent eligibility test, again, we would argue that I, even if agreeing with the apparent eligibility test, there has to be a questioning for a pro se applicant as to whether or not they even have a fear. But what is the strongest case that you have that would support the notion that even when there's no apparent indication of any basis for any fear of going back, and the person has designated the country to go back to and says nothing in the hearing, that there's an obligation to, nevertheless, an obligation to notify of a right? Your Honor, the strongest case that I can put is the O'Rourke test case. Okay. Yeah. However, with regard to the designating a country, again, if it's a pro se applicant and the judge asks what country, if you were ordered removed to, would you choose, I learned the hard way that it's a decline to designate. So they're not going to know it's a decline to designate a country of removal. So that's actually, and finally, like you stated, like you questioned government counsel, if it's not raised with the IJ, the issue, they can't file a motion to reopen because it was evidence that was available at the time of the hearing. You can't do a lazada because there's no attorney. So the only thing to do is to remand based on a violation of due process, right? Not to advise, not even agreeing with Your Honor. She couldn't have raised it in her appeal to the BIA and the BIA? No, Your Honor, because the BIA would have said it's previously available evidence and it was not raised with the lower court. And finally, Your Honor, with regard to the government's concern that it's burdensome, we would argue that there is a mechanism, a strong mechanism where the IJ's advice deter against frivolous applications. So that counterbalance with a person who may have a fear of asylum and their safety is not, is in jeopardy, certainly counterbalances the government's concerns. So that means that if they have to be, if they're advised that they have a right to file, and they right have, and they file one that has no basis, they can get slammed with a frivolousness? With a permanent bar against any illegitimate. With a permanent bar? Yes, Your Honor. Well, maybe they'd be better off not being advised in those circumstances. Your Honor, if the person is pro se, and I would be concerned if the person is pro se, and they do have a fear, but they haven't had the opportunity because they haven't been asked about it, I'd rather give them the chance to apply and let them make that choice. So thank you very much, Your Honor. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v.
judges: Schroeder, Rawlinson, Sandoval